■ In the Matter of COURTNEY L. KLEINBACH, Respondent, v ANDREW W. CULLERTON, Appellant. In the Matter of ANDREW W. CULLERTON, Appellant, v COURTNEY L. KLEINBACH, Respondent. (Appeal No. 1.) [56 NYS3d 733]—

Appeal from an order of the Family Court, Genesee County (Eric R. Adams, J.), entered February 16, 2016 in proceedings pursuant to Family Court Act article 6. The order, inter alia, granted sole custody of the parties' child to Courtney L. Kleinbach, and suspended visitation with Andrew W. Cullerton.

It is hereby ordered that the order so appealed from is unanimously modified on the law by vacating the third and fourth ordering paragraphs and reinstating that part of the petition of respondent-petitioner seeking visitation with the subject child, and as modified the order is affirmed without costs, and the matter is remitted to Family Court, Genesee County, for further proceedings in accordance with the following memorandum: In these child custody and visitation proceedings, respondent-petitioner father appeals, in appeal No. 1, from an order granting the petition of petitioner-respondent mother for sole custody of the subject child, dismissing the father's petition, and denying the father visitation until certain conditions were met, including that the father obtain a report from a counselor or therapist regarding the impact that his visitation would have on the subject child. In appeal No. 2, he appeals from an order that, inter alia, granted that part of his motion seeking access to the child's medical, educational and mental health records, and denied that part of his motion seeking leave to reargue the order in appeal No. 1.

Initially, we dismiss the appeal from the order in appeal No. 2 insofar as it denied leave to reargue. No appeal lies from an order denying leave to reargue (*see Matter of Mehta v Franklin*, 128 AD3d 1419, 1420 [2015]; *see generally Empire Ins. Co. v Food City*, 167 AD2d 983, 984 [1990]). We note in addition that, although the father also purported to seek leave to renew, he "failed to offer new facts that were unavailable at the time of the prior motion or to offer a valid excuse for [his] failure to present the allegedly new facts at the time of [his] prior motion. Thus, that part of the . . . motion purportedly seeking leave to renew was actually one for reargument and . . . no appeal lies from that part of the order" (*Matter of Wayne T.I. v Latisha T.C.*, 48 AD3d 1165, 1165-1166 [2008]). With respect to the remainder of the order in appeal No. 2, the father contends that Family Court erred in denying him access to the subject child's extracurricular and religious records. The father failed to request access to those records in his motion, however, and thus he failed to preserve that contention for our review (*see generally Matter of Chautauqua County Dept. of Social Servs. v Rita M.S.*, 94 AD3d 1509, 1511 [2012]).

In appeal No. 1, we reject the father's contention that the court erred in awarding sole custody of the subject child to the mother. It is well settled "that joint custody is inappropriate [where, as here,] the parties have an acrimonious relationship and are unable to communicate with each other in a civil manner" (*Matter of Christopher J.S. v Colleen A.B.*, 43 AD3d 1350, 1350 [2007]; *see Matter of Hill v Trojnor*, 137 AD3d 1671, 1672 [2016]; *Matter of Ingersoll v Platt*, 72 AD3d 1560, 1561 [2010]). Based upon the evidence of the parties' acrimonious relationship, we perceive no error in granting the mother sole custody.

We agree with the father, however, that the court erred in eliminating his visitation with the subject child and in setting unattainable conditions upon any attempt by him to reinstitute visitation. "Although '[v]isitation decisions are generally left to Family Court's sound discretion' . . . , '[t]he denial of visitation to a noncustodial parent constitutes such a drastic remedy that it should be ordered only when there are compelling reasons, and there must be substantial evidence that such visitation is detrimental to the child[ ]'s welfare' " (*Matter of Tuttle v Mateo* [appeal No. 3], 121 AD3d 1602, 1604 [2014]; *see generally Matter of Granger v Misercola*, 21 NY3d 86, 90-91 [2013]). "The 'substantial proof' language should not be interpreted in such a way as to heighten the burden, of the party who opposes visitation, to rebut the presumption of visitation. The presumption in favor of visitation may be rebutted through demonstration by a *preponderance of the evidence*" (*Granger*, 21 NY3d at 92).

Here, we conclude that there is not "substantial evidence that [the father's] visitation is detrimental to the child[ ]'s welfare" (*Tuttle*, 121 AD3d at 1604). To the contrary, a mental health counselor testified that the child suffered from anxiety, but the counselor could not correlate the child's condition with the father's visitation. In addition, the counselor and the child's teachers testified that the child's anxiety slowly subsided throughout the 2014-2015 school year, which began well before visitation was eliminated, and that the child's condition continued to improve throughout that school year notwithstanding the elimination of visitation in the midst of it. Thus, the court's inference that the improvement in the child's anxiety was the result of the cessation of visitation is not supported by the record (*see generally id.*).

Although the counselor recommended that both parents undergo counseling, neither party followed that recommendation. Furthermore, the mother's self-serving testimony was the only evidence of most of the troublesome behavior allegedly exhibited by the child. Also, the mother testified that she wished to eliminate the father from the child's life. Thus, the record establishes that "the mother has made little to no effort to encourage the relationship between the father and the child [ ], . . . the father submitted evidence supporting an inference that the mother was alienating the child[ ] from the father [, and] the court improperly allowed the [mother] essentially to dictate whether visits would ever occur with the father" (*Guy v Guy*, 147 AD3d 1305, 1306 [2017]). In addition, we conclude that, "despite numerous allegations that [the father] had mental health issues, there is no evidence in the record before us to support a determination that [he] suffered from a mental health condition that would prohibit him from obtaining . . . visitation" with his child (*Matter of Van Orman v Van Orman*, 19 AD3d 1167, 1168 [2005]). We therefore modify the order in appeal No. 1 by vacating the third and fourth ordering paragraphs, and we remit the matter to Family Court for further proceedings on the issue of visitation, including a new hearing after mental health evaluations of both parties and the subject child.

Also in appeal No. 1, we agree with the father that the initial Attorney for the Child (AFC) violated his ethical duty to determine the subject child's position and advocate zealously in support of the child's wishes, because that AFC advocated for a result that was contrary to the child's expressed wishes in the absence of any justification for doing so. "There are only two circumstances in which an AFC is authorized to substitute

his or her own judgment for that of the child: '[w]hen the [AFC] is convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child's wishes is likely to result in a substantial risk of imminent, serious harm to the child' " (*Matter of Swinson v Dobson*, 101 AD3d 1686, 1687 [2012], *lv denied* 20 NY3d 862 [2013], quoting 22 NYCRR 7.2 [d] [3]), neither of which was present here. In addition, although an AFC "should not have a particular position or decision in mind at the outset of the case before the gathering of evidence" (*Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [2000], *lv denied* 95 NY2d 764 [2000]; *see Matter of Brown v Simon*, 123 AD3d 1120, 1123 [2014], *lv denied* 25 NY3d 902 [2015]), the initial AFC indicated during his first court appearance, before he spoke with the child or gathered evidence regarding the petitions, that he would be substituting his judgment for that of the child. Thus, we agree with the father that the child's interests were not represented with respect to visitation. A new AFC has already been substituted for the original AFC, however, and the matter is being remitted for a new hearing regarding visitation for the reasons set forth above. Furthermore, we conclude that the AFC's erroneous actions implicate only the parts of the order that pertain to the father's request for visitation with the subject child. Consequently, we see no need to modify the order further, or to direct the appointment of a replacement for the new AFC, who has advocated in accordance with the child's wishes. The father's remaining contentions concerning the original AFC are academic.

The father further contends in appeal No. 1 that the court violated his due process rights by, inter alia, issuing a temporary order that curtailed his visitation without a hearing, based solely upon the unsubstantiated allegations in the mother's petition. That contention is moot based on the court's subsequent issuance of permanent orders of custody and visitation. "Any alleged defect in the temporary order does not render defective the permanent order, which was based upon a full and fair hearing" (*Matter of Miller v Shaw*, 51 AD3d 927, 927-928 [2008], *lv denied* 11 NY3d 706 [2008], *rearg denied* 11 NY3d 911 [2009]; *see Matter of Kirkpatrick v Kirkpatrick*, 137 AD3d 1695, 1696 [2016]).

We have considered the father's remaining contentions and conclude that they do not require reversal or further modification of the order in appeal No. 1. Present—Smith, J.P., Peradotto, DeJoseph, NeMoyer and Curran, JJ.